United States District Court for the
Central District of Illinois

Tavaris E. Hunt,
    Plaintiff-Petitioner,

   -v-                                           Case No.

Cox, Correctional Officer; Tiona Farring-
ton, Warden of Lincoln CC; Rob Jeffreys,
Director of IDOC; John Doe #1, Officer
of Internal Affairs; Unknown Officials,
IDOC Administrative Officials; John Doe #2,
Transfer Coordinator; Illinois Department of       Jury Demand
Corrections; and Lincoln Correctional Center,
individually and in their Official Capacities,
    Defendants-Respondents.

## Civil Complaint

¶1    Now Comes Plaintiff, Tavaris E. Hunt, pro se, in order to give notice to this Court of his filing a civil action against Cox, Farrington, Jeffreys, Doe #1, Unknown Officials, Doe #2, Illinois Department of Corrections, and Lincoln Correctional Center.

¶2    ### I. Jurisdiction & Venue

¶3    1. This Court has jurisdiction over this action under 28 U.S.C. 1331. The matters under controversy arise under 42 U.S.C. 1983.

¶4    2. Venue properly lies in this District pursuant to 28 U.S.C. 1391(b)(2), because the events given rise to this cause of action occurred at the Lincoln Correctional

Center in Lincoln, Illinois. Which is located in the Central District of the State.

¶5          II. Parties
¶6          (a) Plaintiff
¶7   3. Plaintiff - Name: Tavaris E. Hunt   Inmate No.: M33744
D.O.B.: 12/29/1987   Address: Jacksonville CC, 2268 East Morton Ave, Jacksonville, IL 62650
¶8          (b) Defendants
¶9   4. Defendant no. 1 - Name: Cox   Title: Correctional Officer [Hereinafter CO]
Employer: IDOC   Address: P.O. Box 549, Lincoln, IL 62656. Who at all times relavent hereto was a CO at Lincoln CC. Responsible for the residents safety & security.

¶10  5. Defendant no. 2 - Name: Tiona Farrington   Title: Warden of Lincoln
Employer: IDOC   Address: P.O. Box 549, Lincoln, IL 62656. Who at all times relavent hereto was the Warden of the Lincoln Correctional Center. Responsible for the safety and welfare of individuals in her custody.

¶11  6. Defendant no. 3 - Name: Rob Jeffreys   Title: Director of IDOC
Employer: State of Illinois   Address: 1301 Concordia Court, Springfield, IL 62794. Who at all times relavent hereto was the Director of IDOC. Responsible for the institution of policies & procedures to keep staff and IDOC's residence safe and secure. Also, responsible for the training of his subordinates to properly carry out those policies and procedures.

¶12  7. Defendant no. 4 - Name: John Doe #1   Title: Officer of Internal Affairs   Employer: IDOC   Address: P.O. Box 549, Lincoln, IL 62656. Who at all times relavent hereto worked as an internal affairs officer at Lincoln CC. Responsible for investigating allegations of rule violations by staff or inmates.

¶13  8. Defendant no. 5 - Name: Unknown Officials   Title: IDOC Administrative Officials   Employer: IDOC   Address: 1301 Concordia Court, Springfield, IL 62794.

Who at all times relevent hereto worked at IDOC headquarters as administrative officials. Responsible for the supervision of all IDOC facilities through proper training and on site inspections.

¶14  9. Defendant no. 6 - Name: John Doe #2   Title: Transfer Coordinator   Employer: IDOC   Address: 1301 Concordia Court, Springfield, IL 62794. Who at all times relevent hereto worked as the IDOC Transfer Coordinator. Responsible for determining which IDOC facility an individual in custody would and could be housed. Also, determining whether an individual can be released early on home detention or placed in a work release facility.

¶15  10. Defendant no. 7 - Name: Illinois Dept. of Corrections   Title: State Prison   Employer: State of Illinois   Address: 1301 Concordia Court, Springfield, IL 62794. At all times relevent hereto is a state ran corporation. Responsible for the safety and security of the individuals being held in its facilities on a court ordered sentence of imprisonment.

¶16  11. Defendant no. 8 - Name: Lincoln Correctional Center   Title: IDOC Facility   Employer: IDOC/Illinois   Address: P.O. Box 549, Lincoln, IL 62656. At all times relevent hereto was an IDOC ran facility. Responsible for the safety and security of individuals being held in its facility under sentence.

¶17  III. Litigation History

¶18  12. I have had two cases dismissed which counted as a "strike" under 28 U.S.C. 1915(g).

¶19  13. I have brought 3 other lawsuits in the federal court during my incarceration

¶20  (a) Name of Case: Tavaris E. Hunt v. Securus Technologies, Inc., et al., Court: Central District of Illinois   Docket no.: 21-cv-2272   Basic Claim Made: Violation of Privacy   Disposition: Pending Appeal

¶21  (b) Name of Case: Tavaris E. Hunt v. Rob Jeffreys, et al., Court: Central District of Illinois   Docket no.: 22-cv-3120   Claim Made: Deliberate Indifference   Disposition: Dismissed

¶22  (c) Name of Case: Tavaris E. Hunt v. County of Champaign, IL, et al., Court: Central District of Illinois  Docket no.: 22-cv-2036  Claim Made: Deliberate Indifference  Disposition: Pending

¶23  **IV. Exhaustion of Administrative Remedies**

¶24  14. I have completed all administrative remedies avilable to me.

¶25  **V. Statement of Facts**

¶26  15. I am an African American male. On 5/18/2022 I was transfered from Grahm CC recieving to Lincoln CC a low security risk institution.

¶27  16. My IDOC masterfile shows that I have not violated any rules regarding threats or violence in IDOC's facilities. My prior risk assessment labled me as low aggression.

¶28  17. On 7/28/2022 Officer Cox, a white male CO at Lincoln CC, threatened and caused bodily harm to a black individual in custody named Jumarious Luckett. This incident happened on housing unit 1 on A side between 7:00 am and 10:30 am. During this time Luckett was using crutches due to an injury.

¶29  Cox took Luckett's headphones from his bed area. He told Luckett that if he wanted the headphones back. He would have to mop the dayroom floor. Luckett informed Cox that he could not perform the task because he had to use crutches. Cox told Luckett that he was faking. Luckett followed Cox's instruction to mop the dayroom floor. As Luckett was performing the task, with his crutches, he slipped and fell on the floor. An emergency code was called and the healthcare staff came to take Luckett to the healthcare unit.

¶30  When Luckett was cleared by healthcare and returned to his unit. ~~bein~~ Cox, who wasn't assigned to A side, came over to antagonize Luckett. At some point Cox followed Luckett into his dorm room in an attempt to provoke Luckett to hit him. Cox

took off his security belt with the walkie talkie and other attached items. He then handed it to another CO in the hallway watching. Then returned to the dormroom where Luckett resided. He attempted to get Luckett to punch him by being aggressive and belittling Luckett. At one point Luckett called Cox a bitch and Cox responded by calling Luckett a nigger bitch. Cox left out then came back in and intentionally bumped into Luckett.

¶31    Afterwards Warden Ashley came on the Unit and Luckett to her everything that happened. Luckett was took to operations to speak with John Doe #1. He was then put in disciplinary segregation pending an investigation and was released from segregation on 8/18/22 without a disciplinary report against him. Luckett was put in housing unit 3 side A dorm 4 bed 2. This was where I first met Luckett and heard what Cox had did to him. See Appendix pages 2-4.

¶32    18. On 7/29/22 Cox was assigned to housing unit 3 side A. I was assigned to housing unit 3 side A dorm 4 bed 14. After institutional count at 7:15 am I went into the dayroom. I was waiting with my toiletries for a vacant toilet to use the bathroom.

¶33    Their were two tables set up side by side in the dayroom with individuals in custody sitting at them. Those individuals were new to the facility and had 7:30 am call passes to go take grade locator test for school. Cox got angry because the new individuals went to the door, where the officer are, to ask him how call passes worked. Cox opened the door and yelled, "I can't even write down three letters without you idiots bothering me. Stop fucking bothering me!" Cox then shut the door and locked it.

¶34    A little later Elliott a white individual in custody went to the door and knocked on it to speak with Cox. Individuals began telling Elliott not to bother

- 5 of 11 -

Cox. We could see Cox through up his hands in irritation yelling what through the large window next to the door. Elliott signed to Cox nevermind and sorry to bother you through the window. Elliott began walking back towards his dorm.

9 35      Cox got up unlocked and opened the door then began shouting, "are you people retarded or just stupid. If you are not waiting on the bathroom you shouldn't even be in the dayroom." Cox then went back out the door attempted to slam it shut but the door's pressure hinges wouldn't allow the door to shut at that speed. So, Cox began kicking it shut making the door slam against the doorframe. Then he locked it.

9 36      Less than a minute later Cox got up unlocked and opened the door. He began shouting, "if your not waiting on the restroom go back to your bunks." He suddenly stopped and went to the table closes to the phone. He attempted to lift it while people were still seated at it. They fled from the table and Cox flipped it on its back. He then flipped it on its side and pushed it until it slammed against the chairs by the phones.

9 37      When Cox flipped the first present table I moved to the opposite side of the dayroom. Away from the tables and away from the way he flipped the first one. Cox then lifted the second table and while in complete control of it pushed/rolled it until he banged it into my leg. I looked down at my leg and then back up at him. It hurt however I was scared, mad, confused, shocked, and in a daze. Cox reversed the table from up against my leg and told me to move. I moved. He then moved the table and stood it up. He intentionally hit me with the table.

9 38      Cox left out the door and locked it. He then unlocked and opened the door. He agressively shouted at me, "You see what happened to you for standing in the dayroom. Are you deaf or something?!" I responded by raising my hand with the toiletries and informed him that i'm waiting for a ticket to use the bathroom. Cox then gave me a thumbs up and told me i'm allowed to be where i've been. See Appendix pages 5-8.

¶ 39    19. At 8:00am Elliott and I went to Cox to sign out for the law library. Cox apologized to Elliot for yelling at him. Cox did not show a shread of remorse to me for causing me bodily harm.

¶ 40    20. Individuals in custody who were present during Cox's violent rampage. Told the Sergeants, Lieutenants, and Majors who were on the walk outside during lunchtime of Cox's actions on the unit. They pointed at me and told those officers that Cox hit me with a table. They asked me and I told them yes Cox hit me with a table. They informed me that they may need to talk to me later.

¶ 41    While in my class for custodial maintenance, which I earned one day off my sentence for every day of class I complete per the contract, three officers came and got me. They took me to the healthcare unit. Two nurses and a Lieutenant or Major had me strip down to my underware to have the nurses examine my body. After they were done they told me I could go back to the unit. I asked them if I could have some pain pills for my leg. They told me no because I didn't request pain pills the day it happened on monday (7/25/22) and it would of bruised by now. I informed the nurses that nothing happened monday. That a few hours ago today on friday (7/29/22) an officer hit me in the leg with a table. The nurses looked confused and said that wasn't what they was told. The Lieutenant or Major sent me back to my housing unit. Cox was no longer in the housing unit they moved him to the dinning hall.

¶ 42    21. After I returned to the housing unit I asked the new CO watching our side to call me a sergeant or higher. When the serg came I requested to go back to healthcare to get pain pills for my leg. He told me "no". I declared a hunger strike.

¶ 43    When a hunger strike is initiated the Warden, nurse practitioner, and mental health are alerted and informed why was a hunger strike declared.

¶ 44    The nurse practitioner came and examined my leg. She let me know that it

is a contusion/bruising of my leg muscle causing me pain. I told her what happened. She let me know that she talked to the Warden. She then gave me ibuprofin for the pain. I was told i'd be released from my hunger strike and could return to my unit after Internal Affairs takes photos of my leg.

¶45   22. On second shift I went to see the internal affair's Officer John Doe #1. He took photos of my leg and then told me to go back to my housing unit. He did not speak to me again until 8/15/22 to get a statement of what happened on 7/29/22. He had the grievance i'd submitted on 7/30/22 that was deemed an emergency by the warden on 8/2/22. I told him to call the people I put as witnesses on my grievance to get their statements because I was in a daze for about three days and have a bad memory. As far as I know he never got statements from my witnesses.

¶46   Next time I saw him was on 8/29/22 or 8/30/22. I again asked him about the investigation. He showed me a stack of folders and said they were all ahead of me. However, I have seen John Doe #1 call people over to get statement from them on the day that other incidents happened after my situation. He has effectively impeded my investigation by waiting to take witnesses statements or just not taking them. The individuals in Lincoln CC don't have long sentences. Therefore, if he waits long enough they will be released.

¶47   23. I've alerted the wardens and the ARB that I feared for my safety because they still allowed Cox to work around me or in the tower with a high powered rifle. Nothing changed.

¶48   24. On 8/17/22 a group of administrative officials of idoc and the director came to Lincoln CC. While I was outside of 3 house in line to go to school lunch. The director, the group of unknown administrative officials, Warden Farrington, and the black male warden of operation walked in front of our line. They stopped and

a woman asked how we were doing? I walked to the front of the line and said loud so they could all hear me. "I am wondering what's going on with this officer who hit me with a table two weeks ago." All of the go silent. The Warden of Operations asked me my name. After I give it to him he gave me a thumbs up and said he'd talk to me later. I didn't talk to him until either 8/27/22 or 8/28/22. While I talked to him he texted or emailed Warden Farrington on his cellphone about my inquiries. See A9-A11.

¶49    25. Without warning and over 30 days after Cox caused me bodily harm, I was transferred to Jacksonville CC. I was 23 days into my custodial maintenance contract with 24 days to go to complete the contract, get a certificate, and reduce my sentence. My name had also just been submitted by Counselor Price for a transfer to work release.

¶50    The transfer coordinator and Warden Farrington didn't transfer me because I feared for my safety at Lincoln CC. They transferred me because they knew it would cancel my school contract to earn a certificate and reduce my incarceration. And they knew that it would stop my submission to work release. They did this transfer to punish me for seeking legal actions against Cox, one of their officers, and to show me that its their power to deny placement in work release or on home detention even when I qualify.

¶51    VI. Claims

¶52    26. Count 1 - Eighth and Fourteenth Amendment violation against Cox for discriminating against me because of my race and intentionally causing me bodily harm. Cox's malicious actions of targeting me due to my race then with controlled intent rammed a table into my leg has caused me bodily harm and injured my 8th & 14th Amendment rights. Causing me muscle bruising, pain, suffering, and mental anguish.

¶53    27. Count 2 - Eighth Amendment failure to protect, intervene, and perform

one's duty against Farrington, Doe #1, and Jeffreys for not removing officer Cox away from individuals in custody while he was under investigation for discrimination and causing Luckett bodily harm. Defendants' wanton actions of not taking Cox's violently aggressive actions seriously has caused me to become a victim of Cox's racially motivated violence resulting in me being harmed and injury to my 8th Amendment rights. Causing me pain, suffering, and mental anguish.

¶54       28. Count 3 - Eighth Amendment Deliberate Indifference against Farrington, Doe #1, Jeffreys, and unknown officials for not removing Cox from the presence of me and other individuals in custody during the time that he has been under investigation twice in the same week for his violent and discriminatory actions against me and Luckett. Defendants' wanton actions have kept me in a state of fear and parania for over 30 days injuring my 8th Amendment rights. Causing me suffering and extreme mental anguish.

¶55       29. Count 4 - Eighth or Fourteenth Amendment failure to protect and perform one's duty against Doe #1 for not properly investigating the 7/29/22 incident involving me and Cox. Doe #1's deliberate actions of not identifying witnesses to immediately take their statements in a calculated method to degrade their memory of the event. And Doe #1's stalling of the investigation, which is part of the reason Cox was still allowed to work around me, injured my 8th or 14th Amendment rights. Has caused spoilation of material witnesses' statements, me suffering, and me extreme mental anguish.

¶56       30. Count 5 - First Amendment Retaliation against Farrington and Doe #2 for punishing me for continuing to pursue my complaints against one of their officers. Defendants' actions of transfering me to Jacksonville CC to cancel my school good time contract and prevent my transfer regarding work release as a show of their power. Has caused me to: (1) not earn the sentence credit to reduce my sentence upon completion of my contract; (2) stop me from recieving the Certificate for custodial maintenance; and (3) prevented me from transfering to the work release center. These actions have injured my First Amendment rights, my contract rights, and caused me mental anguish.

- 10 of 11 -

¶57                     VII. Prayer for Relief

¶58        31. WHEREFORE, plaintiff respectfully request this Court grants his Complaint and enters Judgment:

¶59        32. Granting Compensatory awards to Hunt to be payed by each liable defendant; and

¶60        33. Granting Punitive awards to Hunt to be payed by each liable defendant in an amount to be determined by a jury; and

¶61        34. Preliminary and Permanent Injunction against Jeffreys and John Doe #2 to release me on early release home detention or send me to Peoria's work release Center pursuant to 730 ILCS 5/5-8A-3(e);

¶62        35. Preliminary and Permanent Injunction against Jeffreys to suspend officer Cox pending a mental assessment, random drug test, anger management completion, and employee retraining; and

¶63        36. Preliminary and Permanent Injunction against Jeffreys to award me 365 days earned discretionary sentence credits for his subordinates canceling my school contract.

¶64        37. Also to award Hunt cost for this suit and anything else this Court deems just, necessary, and equitable.

                                                  Respectfully Submitted,
                                                  /s/ 3. [signature]
                                                  Tavaris E. Hunt - M33744

                              Verification

Under penalties of perjury as provided by law pursuant to 28 U.S.C. 1746, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Executed on 9/13/2022 in the County of Morgan, State of Illinois.

/s/ 3. [signature]     printed name: Tavaris E. Hunt

                        - 11 of 11 -

United States District Court for the Central District of Illinois

**FILED**
SEP 19 2022
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Tavaris E. Hunt,
    Plaintiff,

v.

Cox, et al.,
    Defendants.

Case No.

## Certificate of Service/Notice of Filing

TO: United States District Court, Office of the Clerk, 600 E. Monroe St., Rm 151, Springfield, IL 62701

PLEASE TAKE NOTICE: that at 10:00 pm on Sept. 13, 2022, I placed the document(s) listed below in the institutional mailbox at Jacksonville Correctional Center, properly addressed to the party listed above with proper postage to be delivered through the United States Postal Service.

Cover page, Temporary Restraining Order or Preliminary Injunction pages 2, Civil Complaint pages 11, Appendix pages 11, Application to Proceed in District Court without prepaying Fees or Cost, Trust Fund Ledger

Under penalties as provided by the law pursuant to 28 U.S.C. 1746; 18 U.S.C 1621; and 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to the matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

                                                /s/ Tavaris E. Hunt
                                                Tavaris E. Hunt
                                                Jacksonville CC
                                                2268 East Morton Ave
                                                Jacksonville, IL 62650