E-FILED
Thursday, 22 September, 2022  10:50:47 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TAVARIS EARL HUNT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-3189 |
| | ) | |
| CORRECTIONAL OFFICER COX, et. al.,) | | |
| Defendants | ) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

The Plaintiff, a pro se prisoner, has filed a complaint and a motion for emergency injunctive relief. [1, 5].

I. MERIT REVIEW

The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff claims his constitutional rights were violated at Lincoln Correctional Center.  Plaintiff has identified eight Defendants including Correctional Officer Cox, Warden Tiona Farrington, Illinois Department of Corrections (IDOC) Director Rob Jeffreys, Internal Affairs Officer John Doe #1, Unknown Administrative Officials, Transfer Coordinator John Doe #2, the Illinois Department of Corrections, and Lincoln Correctional Center.

1

Plaintiff begins his complaint with a detailed account of an incident which occurred between Defendant Cox and another inmate on July 28, 2022. (Comp., p. 4-5). The other inmate is not a Plaintiff in this case.

On Friday, July 29, 2022, Defendant Cox became angry at several inmates in the dayroom at approximately 7:15 a.m.   Plaintiff says he was waiting in line for the restroom. The Defendant picked up a table, flipped it upside down, and slammed it to the side.  Defendant Cox then picked up a second table and "pushed/rolled it until he banged it" into Plaintiff's leg. (Comp, p. 6).  The Defendant told Plaintiff to move, and he complied.  The officer then "moved the table and stood it up. He intentionally hit me with the table." (Comp., p. 6).  Plaintiff does not clarify where he was struck the second time.

Inmates reported the incident to Lincoln Correctional Center Officers.  At lunchtime, Plaintiff confirmed he was struck with a table and unidentified officers said they may need to talk with him.

Later in the day, officers took Plaintiff from his "custodial maintenance" class and took him to the healthcare unit. (Comp, p. 7).  Plaintiff was directed to allow nurses to examine him for injuries. Afterward, Plaintiff was told he could go back to his unit.

Plaintiff asked for pain medication for his leg, but staff denied his request stating Plaintiff had failed to request medication when the injury occurred four days prior. Plaintiff advised staff the incident had occurred that day. "The nurses looked confused and said that wasn't what they were told." (Comp., p. 7).  Plaintiff does not allege he requested medical care at any time prior to his visit to the Healthcare Unit.

2

Plaintiff returned to his unit and asked to speak with a higher-ranking officer. An unidentified sergeant arrived, and Plaintiff asked to return to the Healthcare Unit for pain pills. The request was denied, and Plaintiff declared a hunger strike.

Pursuant to procedure, a nurse practitioner was advised of the hunger strike. When the nurse arrived, she provided Ibuprofen for Plaintiff's complaints of pain and advised Plaintiff she would report his claims to the Warden. Plaintiff does not clarify when this took place, but apparently it occurred before second shift.

Plaintiff later met with Defendant Internal Affairs Officer John Doe #1 who took photos of Plaintiff's leg and sent him back to his housing unit. The Defendant did not obtain a Plaintiff's statement about the events until August 15, 2022. Plaintiff advised the officer he had submitted a grievance which listed witnesses, but he does not believe the Internal Affairs Officer spoke with them.

Plaintiff saw the Defendant Internal Affairs Officer a few days later and asked about the investigation. The Defendant showed Plaintiff a stack of folders and told Plaintiff "they were all ahead of me." (Comp., p. 8).

Plaintiff says he alerted the Warden and the Administrative Review Board he feared for his safety since he still saw Defendant Cox at the facility, but nothing was done. Specifically, on August 17, 2022, Plaintiff spoke to a visiting group which included the IDOC Director, unknown Administrative Officials, the Warden, and the Warden of Operations. Plaintiff asked what was happening with the officer who hit him with a table. The Warden of Operations took Plaintiff's name and said he would investigate it.

3

Plaintiff says about 30 days after the incident, he was unexpectedly transferred to Jacksonville Correctional Center. Plaintiff was approximately halfway through his "custodial maintenance contract" which Plaintiff claims would "reduce his sentence." (Comp, p. 9). Plaintiff also claims he was recommended for work release.

Plaintiff claims Defendant Warden Farrington and the Transfer Coordinator did not transfer him due to fears for his safety. Instead, they transferred him in retaliation for his complaints knowing it would impact his sentence and opportunity for work release.

Plaintiff has adequately alleged Defendant Cox violated his Eighth Amendment rights on July 29, 2022, when he twice threw a table into the Plaintiff. Plaintiff also alleges Defendant Cox violated his Fourteenth Amendment rights because he believes the officer discriminated against him due to his race. However, Plaintiff has not clearly articulated an equal protection violation. "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Herro v. City of Milwaukee*, 44 F.3d 550, 552 (7th Cir. 1995)(internal citation omitted): *see also Johnson v. Village of Bellwood*, 2010 WL 2653335, at *2 (N.D.Ill. July 1, 2010)(not sufficient to simply include conclusory allegation that arrest was motivated by race).

Plaintiff has failed to state a claim based on "deliberate indifference" or "failure to intervene" against any named Defendant for failing to remove Defendant Cox from his job during an investigation of a separate, unrelated incident. Plaintiff has not

4

alleged any facts which would indicate any Defendant had a reason to know Plaintiff and other "individuals in custody" where in danger based on specific allegations from one inmate, nor does Plaintiff claim he complained about Defendant Cox prior to July 29, 2022. (Comp., p. 9-10).

In addition, Plaintiff has failed to state a constitution violation based on his belief the Internal Affairs Officer did not conduct a sufficient investigation into his grievance. "[P]rison officials incur no liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances." *Pryor v. Atkins*, 2021 WL 2454241, at *2 (S.D.Ill. June 16, 2021).

Plaintiff has adequately alleged Defendants Warden Farrington and Transfer Coordinator John Doe #2 retaliated against Plaintiff for his grievance by transferring him to another facility. All other intended claims and Defendants are dismissed for failure to state a claim upon which relief can be granted.

## II. EMERGENCY INJUNCTIVE RELIEF

Plaintiff has filed a Motion for a Temporary Restraining Order or Preliminary Injunction. [5]. A court may only grant a TRO if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). This relief is warranted "to prevent a substantial risk of injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). A TRO is an "emergency remedy" designed to "maintain the status quo until a hearing can be held

on an application for a preliminary injunction." *Crue v. Aiken,* 137 F.Supp.2d 1076, 1082 (C.D.Ill. April 6, 2001).

On the other hand, a preliminary injunction can be issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* Fed. R. Civ. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In addition, in the context of prisoner litigation, the Prisoner Litigation Reform Act (PLRA) places further restrictions on courts' remedial power. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012); *Johnson v. Lashbrook*, 2017 WL 958509, at *1–2 (S.D.Ill. March 13, 2017).  Pursuant to  the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions:

prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

Plaintiff is asking the Court to "compel the defendants to correct wrongs they've intentionally caused and to place (Plaintiff) on early release home detention to prevent future retaliatory actions." (Mot.,p. 1). This Court cannot order IDOC to release Plaintiff or shorten his sentence pursuant to 42 U.S.C.§1983. In addition, Plaintiff does not state he is unable to participate in similar classes or request work release at his current institution.

Plaintiff also outlines his previous bouts with COVID-19 during his incarceration. However, Plaintiff cannot seek injunctive relief for issues which are not related to his complaint.

Plaintiff next maintains Defendants failed to move Defendant Cox even though Plaintiff feared for his safety and frequently complained about those fears. Plaintiff is no longer housed at the same institution as Defendant Cox and therefore injunctive relief is unnecessary.

Plaintiff has not demonstrated he is likely to suffer irreparable harm in the absence of TRO or preliminary injunction. His motion is denied. [5].

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges: a) Defendant Cox violated his Eighth Amendment rights on July 29, 2022, when he twice threw a table into the Plaintiff injuring his leg; and 2) Defendants Warden Farrington and Transfer Coordinator

John Doe #2 retaliated against Plaintiff for his resulting grievance by transferring him to Jacksonville Correctional Center.  The claims are stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service.  Defendants have 60 days from service to file an Answer.  If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained

8

only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Order.  In general, an answer sets forth Defendants' positions.  The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Dismiss Defendants Rob Jeffreys, John Doe #1 (Internal Affairs), John Does (IDOC Administrators), IDOC, and Lincoln Correctional Center for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 2) Deny Plaintiff's Motion for a TRO or Preliminary Injunction, [5]; 3) Attempt service on Defendants pursuant to the standard procedures; 4) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 5) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 22nd day of September, 2022.


s/James E. Shadid

_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE