UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TAVARIS E. HUNT,                    )
                                    )
           Plaintiff,               )
                                    )
v.                                  )          Case No. 22-cv-3189
                                    )
MICHAEL COX, *et al.*,              )
                                    )
           Defendants.              )

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging that (1) Defendant Correctional Officer Michael Cox threw or pushed a cafeteria-style table into his leg on July 29, 2022, at Lincoln Correctional Center ("Lincoln"), and (2) Defendant Warden Tiona Farrington and Transfer Coordinator John Doe #2[1] retaliated against Plaintiff for filing a grievance about Officer Cox by transferring him to Jacksonville Correctional Center ("Jacksonville").

Now before the Court is Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies[2] (Doc. 41); Plaintiff's Response (Doc. 49); and Defendants' Reply (Doc. 60). For the reasons stated below, summary judgment is granted in favor of Defendants.

## MATERIAL FACTS

During all relevant times, Plaintiff was an inmate in the custody of the Illinois Department of Corrections ("IDOC").

On July 30, 2022, Plaintiff filed an emergency grievance ("July 30 Grievance") complaining that Defendant Cox hit his leg with a table on July 29, 2022. (Doc. 41-2). On August

---

[1] On February 21, 2023, the Court substituted Defendant Douglas Stephens for Defendant John Doe #2. (d/e 2/21/2023). On February 22, 2023, the Court added Ilona Flournoy as a Defendant based on defense counsel's representation that Defendant Flournoy may also have been Defendant John Doe #2. (d/e 2/22/2023).

[2] On May 1, 2023, the Court granted Defendants Stephens and Flournoy's Motion to Join Defendants Cox and Farrington's Motion for Summary Judgment. (Doc. 52; d/e 5/1/2023).

2, 2022, the Chief Administrative Officer ("CAO") at Lincoln determined the grievance was an emergency. *Id*. at p. 1.

On August 4, 2022, Plaintiff received a response to the July 30 Grievance from a Correctional Counselor, P. Long, who stated: "Relief requested has been sent to IA [Internal Affairs] for investigation." *Id*.

On August 5, 2022, an Office Coordinator, Luis Cook, also responded to Plaintiff in a written Cumulative Counseling Summary Entry, which stated:

> The individual in custody has been given a first level response to grievance #1462. If the individual in custody does not concur with this response, the individual in custody may appeal this grievance to the second level. This Counseling Summary will be forwarded to the individual in custody, along with the grievance, for the status of this grievance.

(Doc. 41-3).

Plaintiff states he mailed the July 30 Grievance, the Counselor's Response, and CAO's determination of an emergency to the Illinois Administrative Review Board ("ARB") on August 10, 2022. (Doc. 41-1 at p. 2). Plaintiff also sent a letter to the ARB stating he had not received a response to his July 30 Grievance from the Grievance Officer or the CAO. (Doc. 41-4).

On August 19, 2022, Plaintiff received a response from the ARB stating that his July 30 Grievance was being returned because additional information was required. (Doc. 41-5). Specifically, the ARB instructed Plaintiff to "[p]rovide [his] original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable" and to "[p]rovide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal, if timely." *Id*. The ARB also stated: "Grievance not in accor[d]ance with DR504F. DR504.850 is only for appeals. Grievant must go through the process in order to appeal a grievance to the ARB." *Id*.

On August 31, 2022, Plaintiff was transferred to Jacksonville. (Doc. 41-6 at p. 1). On September 1, 2022, Plaintiff filed an emergency grievance ("September 1 Grievance") regarding the allegations in his Complaint against Defendants Farrington, Stephens, and Flournoy. *Id*. at pp. 1-2. Plaintiff stated he filed a grievance about Defendant Cox and then was transferred from Lincoln to Jacksonville without warning. *Id*. at 1.

The Counselor instructed Plaintiff that the September 1 Grievance was "[o]utside jurisdiction of this facility" and to send the grievance to the ARB. *Id*. On September 9, 2022, Plaintiff sent his September 1 Grievance and the Counselor's Response to the ARB. (Doc. 41-7).

Plaintiff filed his Complaint on September 19, 2022, before receiving a response from the ARB. (Doc. 1).

On September 27, 2022, the ARB returned Plaintiff's September 1 Grievance with the following response:

> Grievance not in accordance with DR504F. Per DR504.810, the grievance process shall not be used for decisions rendered by the Director such as facility placement. Grievant does not give a date EPSC was allegedly denied. Grievant should inquire first. Other issues grieved will be addressed by the facility where the grievance is pending. Transfer approval/denials are administrative decisions.

(Doc. 41-7).

Plaintiff attests in his Answers to Interrogatories that he received the ARB's response on September 23, 2022, but the form is dated September 27, 2022. (Doc. 41-1 at p. 3; Doc. 41-7). Whether Plaintiff received the ARB's response on September 23 or 27, 2022, is irrelevant, however, because he filed suit on September 19, 2022, before the grievance process was completed. (Doc. 1).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's "favor toward the nonmoving party does not extend to drawing 'inferences that are only supported by speculation or conjecture.'" *Id*. In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted). Plaintiff is the non-moving party, and the evidence and all reasonable inferences are viewed in the light most favorable to him. *Anderson*, 477 U.S. at 255.

## EXHAUSTION STANDARD

The Prison Litigation Reform Act ("PLRA") prohibits prisoners from filing lawsuits pursuant to § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies under § 1997e is a condition precedent to suit, *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 2009), and applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

4

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion means completing all stages of the process in a timely and proper manner. *Id*. at 1024. An inmate cannot satisfy the requirements by filing an untimely or otherwise procedurally defective grievance or appeal. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). If the inmate fails to exhaust before filing suit, the court must dismiss the suit. *See Jones v. Bock*, 549 U.S. 199, 223 (2007); *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

Plaintiff was required to follow the grievance procedures described in the regulations provided by the IDOC. *See* 20 Ill. Admin. Code § 504.800, *et seq*. In Illinois, inmates may utilize (1) a normal, non-emergency grievance procedure, or (2) an emergency grievance procedure. Under the non-emergency procedure, inmates must follow a three-step process.

First, the inmate must submit a grievance to his or her counselor "within 60 days after the discovery of the incident" giving rise to the grievance, explaining details regarding "each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." § 504.810(a), (c). If the names of each person are unknown, then "the offender must include as much descriptive information about the individual as possible." *Id.* at (c).

Second, if the inmate is dissatisfied with his counselor's response, he must file the grievance with the grievance officer for further review, who will then make a report of findings and recommendations in writing to the CAO. §§ 504.810(a), 504.830(e).

Finally, if the grievance officer denies the grievance and the CAO concurs with that decision, the inmate must appeal to the ARB within thirty days, attaching the grievance officer's report and the CAO's decision to the appeal. § 504.850(a). The ARB will submit a written report

5

of its findings and recommendations to the Director, who will make a final determination of the grievance within six months, when reasonably feasible under the circumstances. *Id*. at (d)-(e). Under this normal, non-emergency procedure, the inmate's administrative remedies are exhausted when he receives a final determination from the ARB and the Director. *Id*. at (e).

A different procedure exists for emergency grievances. Inmates may submit emergency grievances directly to the CAO. § 504.840. The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* at (a). If the CAO classifies the grievance as an emergency, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." *Id*. at (b). After receiving a response from the CAO, if the inmate believes that his problem or complaint has not been resolved, he may appeal in writing to the ARB. § 504.850(a). When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." § 504.850(f).

Failure to exhaust administrative remedies is an affirmative defense; the defendants have the burden of proving the inmate had available remedies he did not utilize. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A lawsuit filed by a prisoner before he exhausted his administrative remedies must be dismissed because the district court lacks the discretion to resolve the claim on the merits. *Perez*, 182 F.3d at 535.

## ANALYSIS

### I.    Plaintiff's July 30 Grievance

Defendants argue that Plaintiff filed his lawsuit before he completed the grievance process. Regarding his July 30 Grievance, Defendants claim Plaintiff failed to exhaust because he

submitted his grievance directly to the ARB without a Grievance Officer's or CAO's response to the merits of the grievance. (Doc. 41 at pp. 8-10).

On August 2, 2022, the CAO determined that Plaintiff's July 30 Grievance was an emergency and noted that the relief requested had been sent to Internal Affairs for an investigation. (Doc. 41-2 at p. 1). Eight days later, Plaintiff sent his July 30 Grievance directly to the ARB. The ARB returned the grievance on August 19, 2022, because additional information was required. (Doc. 41-5). Specifically, the ARB stated he needed to provide a copy of the Grievance Officer's and CAO's response. *Id*.

In his Response, Plaintiff asserts that he exhausted his July 30 Grievance because he appealed to the ARB after receiving the CAO's August 2, 2022, response in accordance with § 504.850. (Doc. 49 at pp. 8-10).

Here, the CAO's emergency classification of the July 30 Grievance on August 2, 2022, merely expedited the grievance process; it did not terminate the process. *See* § 504.840(b) (if an emergency is determined, the grievance shall be processed on an expedited basis). Plaintiff appealed to the ARB on August 10, 2022, leaving the facility just eight days to allow the grievance process to proceed and for Internal Affairs to investigate his requested relief.

In addition, the ARB expressly instructed Plaintiff that he needed to receive responses from both the Grievance Officer and CAO before proceeding to the ARB. Plaintiff received a response from the Grievance Officer on October 31, 2022, and a response from the CAO on November 4, 2022. (Doc. 49 at p. 13). Plaintiff appealed to the ARB a second time on November 22, 2022— after he filed his Complaint on September 19, 2022. *Id.* at p. 14. On December 1, 2022, the ARB denied the appeal, endorsing the facility's internal handling of the grievance. *Id.*

When prison officials instruct a prisoner how to proceed through the administrative process, the prisoner must follow those instructions. *See Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (suggesting that an inmate fails to exhaust administrative remedies when prison officials give an inmate instructions on how to proceed and the inmate ignores or improperly follows those instructions even if "prison officials were responsible for the mishandling of his grievance"); *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (holding that plaintiff failed to exhaust his administrative remedies because he "ignored both of the [administrative review board's] instructions concerning the form of his response"); *McCoy v. Gilbert*, 270 F.3d 503, 508 (7th Cir. 2001) (holding that plaintiff failed to exhaust his administrative remedies because he "had the opportunity to exhaust, but he simply chose not to").

The Court finds that Plaintiff failed to exhaust his July 30 Grievance. Plaintiff appealed to the ARB before allowing the emergency grievance process to be completed, and he filed suit before the grievance process was completed. *See Perez*, 182 F.3d at 535.

## II.    Plaintiff's September 1 Grievance

Defendants also argue that Plaintiff failed to exhaust his September 1 Grievance because he did not wait for the ARB to respond before he commenced this lawsuit on September 19, 2022.

On September 1, 2022, Plaintiff submitted a grievance to his Grievance Counselor regarding Defendant Cox's alleged use of excessive force and his claim that administrative officials retaliated against him by transferring him to a different facility. Plaintiff was instructed to send his grievance directly to the ARB. Plaintiff promptly did so on September 9, 2022. Ten days later, however, Plaintiff filed his Complaint before receiving a response from the ARB, even though the ARB had six months to respond. *See* § 504.850(e).

In his Response, Plaintiff argues that he exhausted all available administrative remedies concerning the decision by Defendants Farrington, Stephens, and Flournoy to transfer him, as there were no other administrative steps available to contest this decision. (Doc. 49 at p. 10). Citing § 504.510(b), Plaintiff argues that he could not use the grievance procedure to remedy that decision, as evidenced by the ARB's response dated September 27, 2022. Plaintiff argues further that the Defendants failed to show any available administrative remedy to contest the transfer decision.

However, according to *Booth v. Churner*, 532 U.S. 731, 738-39 (2001), "one 'exhausts' processes, not forms of relief," indicating the inherent procedural emphasis on the term 'exhausted.' Therefore, even if Plaintiff believed that he could not obtain his desired remedy through the grievance process, the procedural requirement still necessitates that he exhaust the process before bringing his suit. *Gakuba v. Pannier*, No. 21-1961, 2022 WL 1768843, at *2 (7th Cir. June 1, 2022). In *Gakuba*, the Seventh Circuit upheld the exhaustion requirement even in situations where the prisoner believed his efforts would be futile, or the administrative authority lacked the power to grant the requested relief. The Seventh Circuit also noted that, even if the plaintiff could not obtain his desired remedy through the grievance process, he was still required to exhaust the process before filing suit. *Id.*

Here, Plaintiff utilized the grievance process, but he did not wait for a response from the ARB before filing suit. Plaintiff filed his suit on September 19, 2022, before receiving the ARB's response dated September 27, 2022. Plaintiff's lawsuit is premature and must be dismissed as a matter of law under § 1997e(a). *Griffin v. Auterson*, 547 F. App'x 785, 787 (7th Cir. 2013) (citing *Woodford v. Ngo*, 548 U.S. 81, 89-90 (2006)) ("Exhausting before suing allows the prison administrators a chance to remedy possible mistakes before court intervention and ensures that prisoners concentrate on the grievance process, not litigation."); *Ford v. Johnson*, 362 F.3d 395,

398 (7th Cir. 2004) (even if prisoner eventually exhausts while suit is pending, court must dismiss his suit without prejudice).

In conclusion, the caselaw is clear that because Plaintiff failed to complete the grievance process before commencing suit, as to both his July 30 and September 1 Grievances, his case is not ripe under the PLRA and must be dismissed. *Perez*, 182 F.3d at 537. Plaintiff cannot circumvent the PLRA's requirements by completing the grievance process after filing suit. "A suit filed before the prisoner has exhausted these remedies 'must be dismissed.'" *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) (quoting *Perez*, 182 F.3d at 535).

**IT IS THEREFORE ORDERED:**

1)      Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies [41] is GRANTED. Defendants Michael Cox, Tiona Farrington, Douglas Stephens, and Ilona Flourney are DISMISSED without prejudice. Plaintiff takes nothing. The parties will bear their own costs. The Clerk is directed to enter judgment and close this case.

2)      Although this case has been dismissed, Plaintiff remains responsible for the reminder for the $350.00 filing fee. (d/e 9/21/2022).

3)      If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a). A motion for leave to appeal *in forma pauperis* must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.

ENTERED: 10/12/23

s/ James E. Shadid
James E. Shadid
United States District Judge